STATE OF NEBRASKA, APPELLEE, V. DARYL L. SCHRODER, APPELLANT.
439 N.W.2d 489

Filed May 5, 1989.   No. 88-530.

Casey J. Quinn for appellant.

Robert M. Spire, Attorney General, Gary P. Bucchino, Omaha City Prosecutor, and J. Michael Tesar for appellee.

HASTINGS, C.J., SHANAHAN, and FAHRNBRUCH, JJ., and NORTON, D.J., and RONIN, D.J., Retired.

SHANAHAN, J.

After a bench trial in the county court for Douglas County, Daryl L. Schroder was convicted of drunk driving in violation of Neb. Rev. Stat. § 39-669.07 (Reissue 1988) and was sentenced. Schroder appealed to the district court, which affirmed the decision of the county court. Schroder contends that the county court improperly denied him access to police reports which Schroder asserts were essential to effective cross-examination of the arresting officer. Schroder relies on Neb. Evid. R. 612, which provides:

> If a witness uses a writing to refresh his memory for the purpose of testifying, either before or while testifying, an adverse party is entitled to have it produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. If it is claimed that the writing contains matters not related to the subject matter of the testimony, the judge shall examine the writing in camera, excise any portions not so related, and order delivery of

the remainder to the party entitled thereto. Any portion withheld over objections shall be preserved and made available to the appellate court in the event of an appeal. If a writing is not produced or delivered pursuant to order under this rule, the judge shall make any order justice requires.

Neb. Rev. Stat. § 27-612 (Reissue 1985).

About 9:30 p.m. on August 27, 1987, Omaha Police Officer Edward Sinkevich was parked in his cruiser near 20th and Q Streets in Omaha. Sinkevich looked to his right and noticed a man, whom Sinkevich later identified as Schroder, urinating on the sidewalk. Schroder then entered his car, began driving northbound on 20th Street, and was followed by Sinkevich. Although a centerline was not painted or otherwise marked on 20th Street, Schroder was driving his vehicle 2 to 3 feet to the left of the center of the street, in the lane for southbound or oncoming traffic. Schroder traveled only one block and, as soon as he learned that he was being followed by a police cruiser, which was seen in the rearview mirror of Schroder's car, pulled "to the right quickly and parked his vehicle" before the rotating and flashing lights were activated on the police cruiser. Other than the presence of Sinkevich's cruiser behind Schroder, nothing indicates that Sinkevich did anything to cause Schroder's pulling over and stopping his car. In Sinkevich's words, "I did not pull him [Schroder] over. He went off the roadway - - - ."

Sinkevich parked his police cruiser behind Schroder's stationary car, approached the Schroder vehicle, encountered a strong odor of alcohol from the car's interior, and noticed that Schroder had bloodshot eyes and a flushed face.

After Schroder got out of his car, Sinkevich administered a number of field sobriety tests, which Schroder failed. Sinkevich arrested Schroder for drunk driving and at trial, without objection, testified that Schroder was "too intoxicated to drive."

Before Schroder's trial, the prosecutor and Schroder's lawyer apparently reached some sort of agreement regarding the admissibility of the results from an Intoxilyzer breath test administered to Schroder. We use the word *apparently* in view

of the exchange before the trial court:

[Prosecutor]: Your Honor, prior to — pretrial, I talked to [defense counsel] about some stipulations — correct me if I'm wrong . . . , the State and defense stipulating that the intoxilyzer, Model 4011-AS . . . was in correct operating, passed beyond the 27th of August, 1987. We would further stipulate that all the proper maintenance procedures were done; all the proper qualifications set out by Title 177 were met, and finally we're stipulating that the breath test result on Mr. Schroder on the 27th of August, 1987, was .127 grams per 210 liters of breath, and I would offer this and ask that it be received, the test results.

THE COURT: A copy thereof?

[Prosecutor]: It is a copy, Your Honor.

THE COURT: Marked as exhibit 1. Is that your understanding?

[Defense counsel]: It's my understanding that if the proper persons were called, that sufficient foundation would be laid for that, but not probable cause for having to submit to it in the first place. I think - - -

THE COURT: Well, we're not talking about - - -

[Prosecutor]: - - - (Indiscernible) receiving it.

THE COURT: - - - the test being .127.

The record does not reveal whether the court received the Intoxilyzer test results as evidence, although the parties seem to have thought that the test results were in evidence, as later demonstrated by the prosecutor's reference to such results during his closing argument.

After Sinkevich, the only witness against Schroder, had testified on direct examination and recounted the facts set forth above concerning Schroder's arrest, defense counsel, during cross-examination of Sinkevich, discovered that Sinkevich had used part of the officer's written report made on the night of Schroder's arrest to refresh the officer's recollection about the events leading to Schroder's arrest. Defense counsel then asked to see Sinkevich's report, and the prosecutor complied by producing a two-page narrative, filled out by Sinkevich on the night of the arrest. Defense counsel then requested that the

State turn over to counsel the "entire report," to which request the State objected, and the following immediately occurred in open court:

> THE COURT: [To defense counsel.] What was it you specifically want . . . ?
>
> [Defense counsel]: He wrote down in his report that he gave a coin test, Your Honor, and that he fumbled on - - -
>
> THE COURT: You can cross examine him as to that.
>
> [Prosecutor]: You heard his testimony as to the tests he gave the defendant.
>
> [Defense counsel]: There's a test in the report that he doesn't mention this time.
>
> THE COURT: He hasn't mentioned, you know, this time. You can ask him when he gave it to him, what the results are. Then if he denies that he gave it to him, and it's [in] the report, then you can impeach him.

Cross-examination of Sinkevich resumed with his admitting that in the officer's written arrest report he had marked that a "coin test" had been given to Schroder, whereas no such test was administered. Schroder testified in his own defense and admitted consuming three alcoholic drinks in the hour preceding his arrest. At the conclusion of evidence, the court found Schroder guilty of drunk driving as charged.

Schroder bases his appeal on the alleged failure of the county court to apply the provisions of Neb. Evid. R. 612, which is patterned on, but not identical to, Fed. R. Evid. 612. We note that in his appellate argument Schroder relies on Neb. Evid. R. 612, but at trial never asserted Rule 612 as the basis for his requested inspection of the "entire" police report prepared by Sinkevich.

Under Neb. Evid. R. 612, a party seeking access to a document used to refresh a witness' recollection bears the burden of establishing that the document sought was actually used by the witness to refresh recollection for the witness' testimony. See *Rawlings v. Andersen,* 195 Neb. 686, 240 N.W.2d 568 (1976). See, also, *United States v. Larranaga,* 787 F.2d 489, 501 (10th Cir. 1986): "[Fed. R. Evid. 612] is limited. It only requires disclosure of the passage actually used by the witness, and other portions relating to the same subject matter"; *Smith & Wesson v. United States,* 782 F.2d 1074 (1st

Cir. 1986). Neb. Evid. R. 612 does not afford unrestricted access to all documents in the possession of the opposing party, but only to those documents used by the opposing party's witness to refresh the witness' recollection. See, *Henson v. State*, 258 Ga. 600, 372 S.E.2d 806 (1988); 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 612[05] (1988). Under Neb. Evid. R. 612, an objection that the requested document contains information unrelated to the witness' testimony is resolved by submitting the entire document to the court for an in camera review of the document, during which the court shall excise material which is unrelated to the subject matter of the witness' testimony.

In the trial of Schroder's case, the court failed to follow the procedure prescribed in Neb. Evid. R. 612, and determined that Schroder was not entitled to the remainder of Sinkevich's written report without referring to the report itself. Furthermore, the report was not preserved in the record for an appeal notwithstanding the express requirements of Neb. Evid. R. 612. The county court erred in its failure to follow the procedure prescribed in Neb. Evid. R. 612 and by denying Schroder's access to all potentially relevant information in the police report used by Sinkevich to refresh his memory in connection with the officer's testimony.

In his brief, Schroder maintains that the trial court's refusal to allow access to the entire police report resulted in a denial of Schroder's right to a fair trial. Schroder maintains that the remainder of Sinkevich's written report could have been used to impeach Sinkevich's testimony regarding (1) probable cause for stopping Schroder and (2) a field sobriety test which was not administered but incorrectly marked in the arrest report as an administered test. Schroder's contention relative to probable cause is perplexing, given (1) that Sinkevich did not stop Schroder, who voluntarily stopped his car on seeing the trailing police cruiser in the rearview mirror of the Schroder vehicle, and (2) the fact that defense counsel did not object on constitutional grounds to the admission of Sinkevich's testimony regarding Schroder's intoxicated condition. Regarding Schroder's argument that he could have impeached Sinkevich's testimony by pointing out that a sobriety test marked in the report was not administered, we note that

counsel was able to cross-examine Sinkevich effectively without access to the police report, and actually obtained Sinkevich's admission that a "coin test" had not been given, as stated in the officer's written report made after Schroder's arrest.

Rejection of Schroder's request for access to the remainder of Sinkevich's written report was harmless error inasmuch as no "substantial miscarriage of justice" occurred as a result of the error. See Neb. Rev. Stat. § 29-2308 (Reissue 1985). Harmless error exists in a bench trial of a criminal case when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the court in a judgment adverse to a substantial right of the defendant. See *State v. Vejvoda,* 231 Neb. 668, 438 N.W.2d 461 (1989). The error of the county court, that is, failure to adhere to Neb. Evid. R. 612, is harmless beyond a reasonable doubt. Cf. *State v. Cox,* 231 Neb. 495, 437 N.W.2d 134 (1989).

It is difficult to comprehend how the county court's rejection of Schroder's request for access to the entire police report could have prejudiced Schroder's defense, considering the undisputed evidence of Schroder's inebriation, Schroder's own admission that he drank alcohol shortly before driving his vehicle, and Sinkevich's opinion that Schroder was "too drunk to drive," evidence which was admitted without objection. See *State v. Cox, supra* (objection necessary to preserve claimed error for appellate review). See, also, *State v. Pribil,* 227 Neb. 397, 417 N.W.2d 786 (1988).

AFFIRMED.