STATE OF CONNECTICUT *v.* PHILIP MITCHELL
(SC 18219)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille, Zarella and McLachlan, Js.*

---

[10] See footnote 7 of this opinion.

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued February 9—officially released June 1, 2010

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, former state's attorney, and *Nicholas Bove*, senior assistant state's attorney, for the appellant (state).

*Charles F. Willson*, special public defender, for the appellee (defendant).

*Opinion*

VERTEFEUILLE, J. In this certified appeal,[1] the state appeals from the judgment of the Appellate Court reversing the judgment of conviction of the defendant, Philip Mitchell, following a jury trial, of assault in the third degree in violation of General Statutes § 53a-61. *State* v. *Mitchell*, 108 Conn. App. 388, 390–91, 948 A.2d 335 (2008). On appeal to this court, the state claims that the Appellate Court improperly concluded that the trial court's decision denying the defendant's motion to suppress his prearrest statements constituted reversible error in violation of *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). We conclude

---

[1] We granted the state's petition for certification to appeal from the Appellate Court limited to the following issue: "Did the Appellate Court properly conclude that the defendant's statement was admitted in violation of his rights under *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), and if so, was this harmful error requiring a new trial?" *State* v. *Mitchell*, 289 Conn. 904, 904–905, 957 A.2d 874 (2008).

that, even if the defendant's statements were improperly admitted into evidence, their admission was harmless beyond a reasonable doubt. Accordingly, we reverse the judgment of the Appellate Court.

The Appellate Court opinion sets forth the following facts, which reasonably could have been found by the jury. "At approximately 4:30 in the morning on August 20, 2004, the victim was driving on Connecticut Avenue in Bridgeport looking to purchase marijuana. She asked two young women for marijuana, and they told her to follow them. The women turned and walked along Fifth Street, and the victim followed and parked her car. The women went across the street and returned with two men, one of whom was the defendant. The defendant told the victim to turn off her car's engine. Once she did so, all four people attacked her by punching her head, hitting her face, pulling her hair and trying to pull her through the car window. The victim screamed, pulled back, honked her car's horn and held onto the steering wheel so that she would not be pulled from the car. The victim testified that the defendant was 'right in [her] face' during this attack, told her to 'shut the fuck up or I'm going to blow your head off' and acted as though he had a gun. Eventually, the attackers opened the car's passenger door, and the defendant dragged the victim out of her car by the wrists. One of the women took $20 from the victim's pocket while the defendant continued to drag the victim. The victim hooked her foot around a metal fence post and when the defendant let go of her, she stood up. The defendant then kicked her in the stomach and she fell back down. When she got up again, the defendant tried to kick her a second time, but she managed to escape by running away.

"The victim ran back to Connecticut Avenue and, seeing a taxicab, explained to the driver that she had just been robbed and asked him to call the police. She

also pointed out her attackers as they were getting into a car. The taxicab driver made a U-turn and followed the car. He also called the police department and reported the license plate number of the car.

"State police Trooper Christopher Kick was on duty that morning when he was notified of an assault in Bridgeport and provided with a description of a four door, blue vehicle with the license plate number 254-RPY driving on Interstate 95. Upon seeing the car, Kick followed it until he was joined by two other state police troopers, at which point he stopped the vehicle. All three troopers approached the car with weapons drawn, removed the three occupants from the vehicle, placed them on the ground and handcuffed them.[2]

"Meanwhile, the victim was met by Officer Barry Jones of the Bridgeport police department. After she told him about the assault and described the four assailants, she was transported to the site where the suspects had been apprehended. As each suspect was brought in front of the cruiser in which the victim was sitting, she positively identified each as one of the assailants. Subsequently, the victim was taken to the police station where she provided a written statement after which she was taken to a hospital to be treated for her injuries." *State* v. *Mitchell,* supra, 108 Conn. App. 391–92.

Prior to trial, the defendant filed a motion to suppress the prearrest statements that he had made to Kick while waiting for the victim to come to the site and make an identification. The trial court held a hearing on the motion. As the Appellate Court summarized: "On March 30, 2005, at the pretrial hearing on the defendant's motion to suppress, the state called Trooper Kick to testify. Kick testified that he received word in the early

---

[2] "[Although] the victim testified that she was attacked by four people, only three suspects were apprehended in the vehicle." *State* v. *Mitchell,* supra, 108 Conn. App. 392 n.1.

morning hours of August 20, 2004, of an assault that had occurred in Bridgeport and that he had received a description of the alleged perpetrator's vehicle as blue, bearing the license plate number 254-RPY and traveling in the direction of Interstate 95. Kick positioned his vehicle on the highway near the Fairfield rest area, and when he observed a vehicle that matched the description, he drove out to prevent it from exiting the highway. When two other state police cruisers arrived, Kick activated his lights and siren and stopped the car, boxing it in with the police cruisers. The troopers approached the vehicle with guns drawn and ordered the defendant and the other suspects to exit the vehicle and to lie on the ground. The troopers then searched the suspects for weapons, placed them in handcuffs and separated them. While awaiting the Bridgeport police for a possible identification, Kick testified that he individually questioned the suspects as to where they were going and what they were doing to confirm whether he had stopped the right vehicle and whether the suspects were the individuals who had been involved in the assault. As Kick moved from suspect to suspect, he ensured that a trooper remained with each individual because '[i]f you leave them in handcuffs, they could run.' Kick testified that he asked the defendant 'if anything had happened that possibl[y] [came] to mind this evening on why you would have been stopped.' Kick testified that in response, the defendant 'basically came up with nothing. . . . [He] basically replied that he had just taken a ride, he wasn't paying attention, doesn't know where they'd been.' Prior to and during this encounter, the suspects were not informed of their rights pursuant to *Miranda*.

"After the pretrial hearing, the [trial] court issued a memorandum of decision on March 31, 2005, denying the motion to suppress. The [trial] court concluded that the state had conceded that the defendant was in police

custody while being questioned by Kick. The [trial] court found, however, that Kick's questions did not amount to an interrogation, and, therefore, *Miranda* warnings were unnecessary. Accordingly, the [trial] court found that the defendant's statements were admissible. The [trial] court opined that 'Kick's questions, "What is going on?" [and] "Why were you stopped?" ' were asked at the threshold of the encounter and were arguably aimed at determining the nature of the situation confronting the police at that time. There is no suggestion that Kick's queries were probing, accusatory or likely to elicit an incriminatory response. The [trial] court stated: 'The fact that Kick asked questions about "what was going on" without the intent of eliciting a confession or inculpatory information, but simply to investigate the situation before him, was not an interrogation.' " Id., 393–95.

The defendant's prearrest statements to Kick were admitted into evidence during trial. At the conclusion of the evidence, the trial court charged the jury on, inter alia, consciousness of guilt.[3] Id., 399. The jury subsequently found the defendant guilty of assault in

[3] The trial court charged the jury as follows: "In any criminal trial, it is permissible for the state to show that conduct or statements made by a defendant after the time of the alleged offense, which may fairly have been influenced by the criminal act, that is, the conduct or statements show a consciousness of guilt. Flight, when unexplained, tends to prove a consciousness of guilt. The flight of a person accused of a crime is a circumstance which, when considered together with all the facts of the case, may justify . . . a finding of the defendant's guilt. . . . Whenever a person is on trial for a criminal offense, it is proper to show that person's conduct, as well as any declarations made by him subsequent to the alleged criminal offense which may fairly have been influenced by that act. The manner in which the defendant conducted himself when asked by others, in respect to the subject of the case, may be shown. If he should make false statements as to his whereabouts at the time of the offense, these might tend to show a guilty connection by the defendant with the crime charged. It is up to you, as judges of the facts, to decide whether statements or conduct of the defendant reflect consciousness of guilt and to consider such in your deliberations in conformity with these instructions."

the third degree, but not guilty of the other charged offenses, specifically, robbery in the second degree, conspiracy to commit larceny in the second degree, unlawful restraint in the first degree and threatening in the second degree. Id., 392. The trial court rendered a judgment of guilty in accordance with the verdict and imposed a sentence of eight months incarceration.[4] Id.

The defendant appealed from the trial court's judgment of conviction to the Appellate Court, claiming, inter alia, that the trial court improperly had denied his motion to suppress his prearrest statements. Specifically, the defendant claimed that his statements to Kick were the result of an impermissible custodial interrogation because he had not received *Miranda* warnings. Id., 393. The defendant additionally asserted that the state could not demonstrate that the admission of the prearrest statements was harmless beyond a reasonable doubt because the trial court highlighted the statements to the jury through the consciousness of guilt charge. Id. The state responded that the statements were not the product of custodial interrogation, but that, even if they were, the admission of the statements was harmless beyond a reasonable doubt because the statements were not inculpatory and were merely cumulative of the other evidence presented demonstrating his guilt. Id., 395 n.3, 399.

The Appellate Court ultimately concluded "that Kick's questioning of the defendant constituted a custo-

---

[4] At the time of sentencing in the present case, the defendant was serving an eight year term of incarceration that had been imposed on November 1, 2004, in an unrelated matter. The trial court imposed the eight month sentence to run consecutively to the eight year sentence. *State* v. *Mitchell,* supra, 108 Conn. App. 392 n.2. It therefore appears that the eight month sentence has not yet expired. Regardless, we are mindful that "[i]t is well established that since collateral legal disabilities are imposed as a matter of law because of a criminal conviction, a case will not be declared moot even where the sentence has been fully served." (Internal quotation marks omitted.) *Rowe* v. *Superior Court,* 289 Conn. 649, 656, 960 A.2d 256 (2008).

dial interrogation," which therefore triggered the need for *Miranda* warnings. Id., 399. The Appellate Court reasoned that Kick was not merely "trying to assess the situation at hand; rather, he was attempting to confirm whether he had the right suspects. It is manifest that an officer may not ask a person in custody[5] questions that the officer knows are reasonably likely to elicit an incriminating response [without giving *Miranda* warnings]." Id. The Appellate Court further concluded that the admission of these statements was not harmless beyond a reasonable doubt because "[a]lthough the defendant's statement . . . appears relatively benign, the court's use of it as consciousness of guilt evidence cast the statement in a light unfavorable to the defendant." Id., 400. "[T]he court's charge not only accentuated the improperly admitted statement, but it also pointed to the defendant's potential involvement [in the victim's assault]. This emphasis makes it impossible for us to conclude that the improper admission was harmless beyond a reasonable doubt." Id., 402. The Appellate Court therefore reversed the defendant's judgment of conviction. Id. This appeal followed after our grant of the state's subsequent petition for certification. See footnote 1 of this opinion.

On appeal to this court, the state claims that the Appellate Court improperly concluded that the defendant's prearrest statements were the result of custodial interrogation pursuant to *Miranda* v. *Arizona*, supra, 384 U.S. 478–79. According to the state, the statements were the result of permitted investigatory questioning pursuant to *Terry* v. *Ohio*, 392 U.S. 1, 21–22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). Moreover, the state asserts

---

[5] The trial court found that the state had conceded that the defendant was in custody. The state challenged this determination before the Appellate Court, but that court concluded that this finding was supported by the evidence. *State* v. *Mitchell*, supra, 108 Conn. App. 395 and n.3. The state again challenges this finding in this court.

that, even if the prearrest statements violated *Miranda*, their admission at trial was harmless beyond a reasonable doubt because the cumulative evidence presented against the defendant adequately demonstrated his guilt. The defendant responds that the Appellate Court properly concluded that the admission of the defendant's prearrest statements violated *Miranda* because he was subject to a custodial interrogation, thereby exceeding the bounds of permissible *Terry* questioning. The defendant further contends that the Appellate Court correctly concluded that the admission of the statements was not harmless beyond a reasonable doubt because these statements provided the only foundation for the consciousness of guilt charge given by the trial court to the jury. We agree with the state that, even if the admission of the defendant's statements constituted a *Miranda* violation, the admission nevertheless was harmless beyond a reasonable doubt.[6]

We begin with our standard of review and background legal principles with regard to *Miranda* warnings. "As an initial matter, we note that [o]ur standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [When] the legal conclusions of the court are challenged, [our review is plenary, and] we must determine whether they are legally and logically correct and whether they find support in the facts set out in the court's memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Foreman*, 288 Conn. 684, 691, 954 A.2d 135 (2008).

---

[6] Because we conclude that the admission of the defendant's statements was harmless beyond a reasonable doubt, we do not address the state's initial claim that these statements were within the purview of a proper *Terry* stop.

"Two threshold conditions must be satisfied in order to invoke the warnings constitutionally required by *Miranda*: (1) the defendant must have been in custody; and (2) the defendant must have been subjected to police interrogation." *State* v. *Brown*, 199 Conn. 47, 51, 505 A.2d 1225 (1986). "The defendant bears the burden of proving that he was in custody for *Miranda* purposes. . . . Two discrete inquiries are essential to determine custody: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. . . . The first inquiry is factual, and we will not overturn the trial court's determination of the historical circumstances surrounding the defendant's interrogation unless it is clearly erroneous. . . . The second inquiry, however, calls for application of the controlling legal standard to the historical facts. . . . The ultimate determination of whether a defendant was subjected to a custodial interrogation, therefore, presents a mixed question of law and fact, over which our review is de novo. . . . [T]he term interrogation under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." (Citations omitted; internal quotation marks omitted.) *State* v. *Canales*, 281 Conn. 572, 584–85, 916 A.2d 767 (2007).

If statements taken in violation of *Miranda* are admitted into evidence during a trial, their admission must be reviewed in light of the harmless error doctrine. See footnote 6 of this opinion; see also *State* v. *Brunetti*, 279 Conn. 39, 77–78, 901 A.2d 1 (2006); *State* v. *Zubrowski*, 101 Conn. App. 379, 385, 921 A.2d 667 (2007), appeal dismissed, 289 Conn. 55, 956 A.2d 578 (2008), cert. denied, 555 U.S. 1216, 129 S. Ct. 1533, 173 L. Ed. 2d 663 (2009). "The harmless error doctrine is rooted in the

fundamental purpose of the criminal justice system, namely, to convict the guilty and acquit the innocent. . . . Therefore, whether an error is harmful depends on its impact on the trier of fact and the result of the case." (Internal quotation marks omitted.) *State* v. *Montgomery*, 254 Conn. 694, 717, 759 A.2d 995 (2000). "This court has held in a number of cases that when there is independent overwhelming evidence of guilt, a constitutional error would be rendered harmless beyond a reasonable doubt." *State* v. *Hafford*, 252 Conn. 274, 297, 746 A.2d 150, cert. denied, 531 U.S. 855, 121 S. Ct. 136, 148 L. Ed. 2d 89 (2000). When "an [evidentiary] impropriety is of constitutional proportions, the state bears the burden of proving that the error was harmless beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *John M.*, 285 Conn. 822, 832–33, 942 A.2d 323 (2008). "[W]e must examine the impact of the evidence on the trier of fact and the result of the trial. . . . If the evidence may have had a tendency to influence the judgment of the jury, it cannot be considered harmless." (Internal quotation marks omitted.) *State* v. *Moore*, 293 Conn. 781, 806, 981 A.2d 1030 (2009). "That determination must be made in light of the entire record [including the strength of the state's case without the evidence admitted in error]." (Internal quotation marks omitted.) *State* v. *Montgomery*, supra, 718.

In *State* v. *Brunetti*, supra, 279 Conn. 78, we determined that the admission of the defendant's prearrest statement, even if in violation of *Miranda*, was harmless beyond a reasonable doubt. In that case, the defendant had been brought to the local police station to be questioned about his suspected involvement in a recent murder. Id., 45. While a detective questioned the defendant at the police station, other officers conducted a search of the defendant's residence and found recently laundered clothing in the washing machine. These clothes had " 'bleach-like' " and " 'blood-like' " stains. Id. When

the detective questioning the defendant learned of the discovery, he asked the defendant to explain the stains on the clothing. Id., 46. The defendant became visibly upset and requested a Bible. The detective issued the defendant *Miranda* warnings, and the defendant subsequently gave an inculpatory statement that detailed how he had committed the murder. Id.

At trial, the defendant's statement requesting the Bible was admitted into evidence through the detective's testimony. Id., 77. On appeal, the defendant claimed that the admission of his statement violated his *Miranda* rights. Id. We concluded that, even excluding the statement, the other evidence against the defendant was sufficient to uphold the conviction: the defendant had been seen in close proximity to the scene at the time of the murder; the victim's blood was on the defendant's clothing; the defendant provided a detailed post-*Miranda* confession; and a piece of the defendant's necklace was found tangled in the victim's hair. Id., 78. Therefore, any impropriety in the use of the defendant's statement was harmless beyond a reasonable doubt. Id.

In the present case, we must determine the impact of the admission of the defendant's statements on the trier of fact and on the result of the case. The most noteworthy fact is that the defendant's statements were not inculpatory; he did not confess to committing any crime or to being at or near the scene of the crime. Unlike the defendant's confession in *Brunetti,* the defendant's statements did not incriminate him with regard to the offenses with which he was charged. Cf. *State* v. *Ritrovato,* 280 Conn. 36, 67, 905 A.2d 1079 (2006) (noting state's evidence is strong when there is signed

confession); *State* v. *Patterson*, 276 Conn. 452, 473, 886
A.2d 777 (2005) ("evidence regarding an accused's
admission of guilt generally is extremely important to
the state and damaging to the accused"). The defendant
stated only that he had been taking a ride in the car
and did not recall where he and his friends had been.
*State* v. *Mitchell*, supra, 108 Conn. App. 394. As the
Appellate Court noted, the defendant's statements to
Kick were "relatively benign" and "facially innocuous
. . . ." Id., 400.

Moreover, as in *Brunetti*, the state's case against the
defendant was strong. First, the defendant was found
in the automobile that the victim and the taxi driver
had seen leave the scene of the assault. The car matched
the color, description and, most significantly, the
license plate number given to the police. In addition,
the car was stopped by the police traveling in the direc-
tion that it was last seen by the taxi driver, specifically
driving on Interstate 95, away from the scene of the
assault. Furthermore, the victim provided a prompt,
unhesitating identification of the defendant within only
one hour of the attack. Her identification of the defen-
dant was strong evidence against him because the victim
testified that she had had close contact with her assail-
ant. The victim alleged that the defendant was "right
in [her] face" during the attack, and that he had threat-
ened to "blow [her] head off," dragged her out of the car,
and kicked her. The impact of the defendant's statements
was minimal given their noninculpatory nature and
the strength of the other evidence against him. We there-
fore conclude that, even if the Appellate Court
properly determined that the defendant's prearrest
statements had been improperly admitted into evidence
in violation of *Miranda*, it improperly concluded that

their admission was not harmless beyond a reasonable doubt.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.

_____

* The listing of justices reflects their seniority status on this court as of the date of oral argument.