there was no material change in circumstances in that case. Nonetheless, because I agree with the majority's conclusion in the case before us, I concur.

———————————

State of Nebraska, appellee, v.
Joshua D. Leibel, appellant.
___ N.W.2d ___

Filed October 25, 2013.    No. S-12-1047.

1. **Appeal and Error.** An appellate court resolves questions of law and issues of statutory interpretation independently of the lower court's conclusion.
2. **Constitutional Law: Witnesses: Appeal and Error.** An appellate court reviews de novo a trial court's determination of the protections afforded by the Confrontation Clause of the Sixth Amendment to the U.S. Constitution and reviews the underlying factual determinations for clear error.
3. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.
4. **Judgments: Presumptions: Appeal and Error.** A judgment of the district court brought to an appellate court for review is supported by a presumption of correctness.
5. **Judgments: Appeal and Error.** An appellant challenging a judgment of the district court brought to an appellate court for review must both assign and specifically argue any alleged error.
6. **Constitutional Law: Trial: Hearsay.** Where testimonial statements are at issue, the Confrontation Clause demands that such out-of-court hearsay statements be admitted at trial only if the declarant is unavailable and there has been a prior opportunity for cross-examination.
7. **Public Officers and Employees: Motor Vehicles: Records: Intent.** Although the employees who create driving records may reasonably believe the records will be available for some possible future prosecution, the sole purpose of creating driving records is not to create evidence for trials.
8. **Records: Witnesses.** Because neutral, bureaucratic information from routinely maintained public records is not obtained by use of specialized methodology, there is little, if any, practical benefit to applying the crucible of cross-examination against those who maintain the information.
9. **Constitutional Law: Trial: Witnesses: Appeal and Error.** The improper admission of statements in violation of the right to confrontation is a trial error subject to harmless error review.
10. **Constitutional Law: Trial: Proof: Appeal and Error.** Where the trial error is of a constitutional dimension, the burden must be on the beneficiary of the error to prove beyond a reasonable doubt that the error did not contribute to the verdict obtained.

11. **Sentences.** The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

Appeal from the District Court for Lancaster County: Karen B. Flowers, Judge. Affirmed.

Dennis R. Keefe, Lancaster County Public Defender, Scott P. Helvie, and Ariel Johnson, Senior Certified Law Student, for appellant.

Jon Bruning, Attorney General, and Melissa R. Vincent for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

McCormack, J.

## NATURE OF CASE

The sentencing order for the defendant's prior conviction of driving under the influence allowed him to drive with an ignition interlock permit and device. The defendant failed to obtain an ignition interlock permit or device, however, before driving. He was convicted of the felony offense of driving with a revoked license in violation of Neb. Rev. Stat. § 60-6,197.06(1) (Reissue 2010). The defendant argues that in *State v. Hernandez*,[1] we held that § 60-6,197.06(1) is ambiguous and that ignition interlock device violations fall under a different misdemeanor statute specific to such violations. The defendant also asserts that his Department of Motor Vehicles (DMV) record and accompanying documents, as well as statements certifying their authenticity, were inadmissible hearsay and violated his right to confrontation. Finally, he asserts that his sentence was excessive. We affirm.

## BACKGROUND

Joshua D. Leibel was charged under § 60-6,197.06 with operating a motor vehicle while his operator's license had been revoked, a Class IV felony. Leibel had previously been

---

[1] *State v. Hernandez*, 283 Neb. 423, 809 N.W.2d 279 (2012).

sentenced to 5 years of license revocation for a conviction of driving under the influence, third offense. The sentencing order specified that Leibel would be permitted to drive after he obtained an ignition interlock permit and equipped his vehicle with an ignition interlock device.

At the bench trial for the charge of driving with a revoked license, the State presented the testimony of a Lincoln police officer. The officer testified that on October 3, 2011, he pulled Leibel's vehicle over after observing expired tags on the license plates of the vehicle. The officer testified that during the stop, Leibel told him that his driver's license was suspended. The officer did not observe an ignition interlock device on the vehicle Leibel was driving.

The State also offered into evidence two exhibits. Exhibit 2 contained a certified copy of the 2011 sentencing order and other documents relating to the 2011 conviction. Exhibit 2 was admitted without objection.

Exhibit 1 contained the administrative order of revocation of Leibel's driver's license by the DMV and related DMV documents, as well as the "Complete Abstract of Record" for Leibel with the DMV. There was no indication in the complete DMV record that Leibel had been issued an ignition interlock permit before October 3, 2011. The abstract instead reflects that Leibel was issued an ignition interlock permit on October 4.

Each page of the abstract and accompanying DMV documents contains either the seal of the DMV or a file stamp. The abstract contains an apparent photocopy of a signed certification by a custodian of the records division, Betty Johnson, attesting it is a true and correct abstract of the operating record. This certification page also contains the raised seal of the DMV.

The DMV abstract and accompanying documents were prefaced by a letter written by the DMV program manager, Kathy Hraban, certifying that the copies of the DMV record were true and exact copies of the originals on file at the DMV. In the letter, Hraban also states that on October 3, 2011, Leibel's driving privileges had not been reinstated and Leibel did not have an ignition interlock permit.

Defense counsel objected to the entirety of exhibit 1 on foundation, relevance, hearsay, and Confrontation Clause grounds. The district court overruled Leibel's objections and received the exhibit.

After the close of the State's case in chief, defense counsel moved to dismiss the charges for failure to establish a prima facie case. Defense counsel presented no evidence in Leibel's defense and, after resting, renewed his motion to dismiss. Defense counsel argued that Leibel should have been charged with misdemeanor ignition interlock permit violations and not with the felony of driving with a revoked license.

The district court overruled Leibel's motion to dismiss. The court reasoned that Neb. Rev. Stat. § 60-6,211.05(5) (Reissue 2010) applied to persons who had obtained their ignition interlock permit as allowed by the sentencing order, while § 60-6,197.06 applied to persons who had failed to obtain their ignition interlock permit.

The district court found Leibel guilty of violating § 60-6,197.06(1). At the sentencing hearing, Leibel explained that he had been relying on his girlfriend to drive him around, but they broke up. He lives in a rural area and does not have access to public transportation. Leibel stated he had finally saved up the money to install an ignition interlock device and was going to apply for a permit. But before getting the permit, he was called into the probation office for a test. He made the decision to drive to his probation visit. After the probation visit, Leibel went to work, made a telephone call while at work to obtain the necessary car insurance, and went to get the ignition interlock device installed. According to Leibel, the person able to install the device was not available at that time and Leibel was directed to come back the next day. On his way home, Leibel was stopped by the police officer.

The court sentenced Leibel to 90 days' jail time and a 15-year license revocation. The court reasoned that it was inappropriate to simply place Leibel on probation when the offense was a probation violation. Leibel's presentence investigation report indicated multiple misdemeanor offenses and two prior convictions of driving with a suspended license, in addition to his prior convictions of driving under the influence. The court

stated it would allow Leibel the opportunity to drive with an ignition interlock device and permit as soon as he was eligible by statute; and the court deferred the 90-day jail sentence until Leibel could request a work release. Leibel appeals the conviction and sentence, which was deferred until the resolution of this appeal.

## ASSIGNMENTS OF ERROR

Leibel asserts that the district court erred in (1) admitting exhibit 1, (2) failing to apply the reasoning of *Hernandez*, (3) convicting him on insufficient evidence, and (4) imposing an excessive sentence.

## STANDARD OF REVIEW

[1] An appellate court resolves questions of law and issues of statutory interpretation independently of the lower court's conclusion.[2]

[2] An appellate court reviews de novo a trial court's determination of the protections afforded by the Confrontation Clause of the Sixth Amendment to the U.S. Constitution and reviews the underlying factual determinations for clear error.[3]

[3] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.[4]

## ANALYSIS

### Hearsay and Confrontation

Leibel first asserts that the court erred in admitting exhibit 1 over his hearsay and Confrontation Clause objections. He points out that without exhibit 1, there would be little evidence he violated either the felony statute under which he was convicted or the misdemeanor statute he believes he should have been charged with violating. Leibel's principal argument is that both the certificates of authenticity and the DMV records to which the certificates pertained were testimonial in nature;

---

[2] *Fox v. Whitbeck*, 280 Neb. 75, 783 N.W.2d 774 (2010).

[3] *State v. Sorensen*, 283 Neb. 932, 814 N.W.2d 371 (2012).

[4] *State v. McGuire, ante* p. 494, ___ N.W.2d ___ (2013).

therefore, their admission without the opportunity to cross-examine violated his right to confrontation. Leibel alternatively asserts that the State waived any argument on appeal that exhibit 1 was admissible hearsay under the rules of evidence. We address Leibel's rules of evidence argument first.

The parties agree that exhibit 1 contains hearsay. The general rule is that hearsay evidence is inadmissible unless it fits within a recognized exception to the rule against hearsay.[5] But besides a bare assertion that exhibit 1 was inadmissible, Leibel fails to present any argument that the district court was incorrect in its implicit determination that the statements therein fit within a recognized exception to the rule against hearsay. Instead, Leibel argues that because the State failed to articulate at trial the specific hearsay exception under which it claimed admissibility of the exhibit, the State waived for purposes of this appeal any argument that exhibit 1 was admissible.

[4,5] Leibel misunderstands the respective responsibilities of the parties on appellate review. A judgment of the district court brought to our court for review is supported by a presumption of correctness.[6] An appellant challenging that judgment must both assign and specifically argue any alleged error.[7] Thus, an appellant whose hearsay objection was overruled by the trial court has the onus on appeal of showing that such statements were in fact hearsay and that no exception to or exclusion from the hearsay rule permitted its admission.[8] Leibel has failed to sufficiently argue grounds for reversal of the district court's ruling on his hearsay objection. We turn to his argument that the admission of exhibit 1 violated his confrontation rights.

[6] Where testimonial statements are at issue, the Confrontation Clause demands that such out-of-court hearsay statements be admitted at trial only if the declarant is

---

[5] See Neb. Rev. Stat. §§ 27-802 and 27-803 (Reissue 2008).

[6] See *Flood v. Keller*, 214 Neb. 797, 336 N.W.2d 549 (1983).

[7] *State v. Rodriguez*, 272 Neb. 930, 726 N.W.2d 157 (2007).

[8] See *Menorah Medical Center v. Davis*, 463 S.W.2d 618 (Mo. App. 1971).

unavailable and there has been a prior opportunity for cross-examination.[9] There is no argument that the declarants of the hearsay statements contained in exhibit 1 were unavailable and that Leibel had a prior opportunity to cross-examine them. Whether Leibel's right to confrontation was violated thus depends entirely on whether the statements contained in the DMV records and in the certifications of those records were "testimonial." This presents an issue of first impression for our court.

To properly address this issue, a brief examination of the U.S. Supreme Court decision *Crawford v. Washington*,[10] and its progeny, is necessary. In *Crawford*, the U.S. Supreme Court held that, at a minimum, testimonial statements include formal statements by an accuser to government officers.[11] Thus, the wife's recorded statement during a police interrogation was subject to the Confrontation Clause. Later, in *Davis v. Washington*,[12] the Court similarly concluded that statements made during a police interrogation of a victim were "testimonial" if directed at establishing the facts of a past crime and not directed at current circumstances requiring police assistance.[13]

The Court explained in *Crawford* that the Confrontation Clause was crafted in response to the practice in England of reading in lieu of live testimony pretrial examinations of suspects and witnesses, which had previously been conducted by justices of the peace or other officials.[14] The Court said that the "Sixth Amendment must be interpreted with this focus in mind."[15]

---

[9] See *State v. Sorensen, supra* note 3.

[10] *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

[11] See *id*.

[12] *Davis v. Washington*, 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006).

[13] See *Michigan v. Bryant*, ___ U.S. ___, 131 S. Ct. 1143, 179 L. Ed. 2d 93 (2011).

[14] *Crawford v. Washington, supra* note 10.

[15] *Id*., 541 U.S. at 50.

In *Crawford*, the Court overruled *Ohio v. Roberts*,[16] which for a quarter of a century had stood for the proposition that the confrontation right does not bar admission of ex parte statements bearing adequate """indicia of reliability."""[17] Thus, falling under a firmly rooted hearsay exception or otherwise bearing "'particularized guarantees of trustworthiness,'" no longer defined when an ex parte statement was admissible without being subject to cross-examination.[18] The Court said in *Crawford* that the framers of the Constitution did not mean "to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of 'reliability.'"[19]

Subsequently, in *Melendez-Diaz v. Massachusetts*,[20] a more divided Court held that in a trial on charges of distributing cocaine, forensic analysis certifications that the substance seized from the defendant was cocaine, were "testimonial." A plurality of the Court similarly held in *Bullcoming v. New Mexico*,[21] that ex parte statements certifying the results of the gas chromatograph machine, and prepared for a trial on charges for driving under the influence, were "testimonial." The Court in *Bullcoming* rejected the idea that the analyst was not an """"accuser,""""[22] and thus did not fall under the Sixth Amendment protection to be confronted with the "witnesses against him." The Court noted in *Melendez-Diaz* that the analysts "prov[ed] one fact necessary for [the defendant's] conviction."[23]

---

[16] *Ohio v. Roberts*, 448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980).

[17] *Michigan v. Bryant, supra* note 13, 131 S. Ct. at 1152.

[18] *Crawford v. Washington, supra* note 10, 541 U.S. at 60.

[19] *Id.*, 541 U.S. at 61.

[20] *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009).

[21] *Bullcoming v. New Mexico*, ___ U.S. ___, 131 S. Ct. 2705, 180 L. Ed. 2d 610 (2011).

[22] *Id.*, 131 S. Ct. at 2714.

[23] *Melendez-Diaz v. Massachusetts, supra* note 20, 557 U.S. at 313. Accord *Bullcoming v. New Mexico, supra* note 21.

In both *Melendez-Diaz* and *Bullcoming*, the Court took pains to point out that the analysts were not "'mere scrivener[s].'"[24] The Court in *Bullcoming* noted that the analyst had also certified that he received the blood sample intact, had adhered to a precise protocol in conducting the test, and had observed no circumstance or condition affecting the integrity of the sample or the validity of the analysis.[25] The Court in *Melendez-Diaz* explained at length how the scientific testing at issue in that case was not "immune from the risk of manipulation."[26]

In *Melendez-Diaz*, the Court explicitly endorsed the "'[v]arious formulations'" of the "'core class of testimonial statements,'" which it had first noted in *Crawford*.[27] That list included "'*ex parte* in-court testimony or its functional equivalent,'" "'similar pretrial statements that declarants would reasonably expect to be used prosecutorially,'" and "'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement[s] would be available for use at a later trial.'"[28] Specific examples falling under these formulations included affidavits, depositions, prior testimony, confessions, custodial examination, and other formalized testimonial materials.[29]

The Court said in *Melendez-Diaz* that "the paradigmatic case identifies the core of the right to confrontation, not its limits."[30] But, most recently, in *Williams v. Illinois*,[31] the Court said that "any further expansion [beyond the 'modern-day practices that are tantamount to the abuses that gave rise to the recognition of the confrontation right'] would strain the constitutional text."

---

[24] *Bullcoming v. New Mexico, supra* note 21, 131 S. Ct. at 2714.

[25] *Id*.

[26] *Melendez-Diaz v. Massachusetts, supra* note 20, 557 U.S. at 318.

[27] *Id*., 557 U.S. at 310.

[28] *Id*.

[29] *Id*.

[30] *Id*., 557 U.S. at 315.

[31] *Williams v. Illinois*, ___ U.S. ___, 132 S. Ct. 2221, 2242, 183 L. Ed. 2d 89 (2012).

Apparently to limit such further expansion of *Crawford*, several principles have "weaved in and out of the *Crawford* jurisprudence."[32] The U.S. Supreme Court said in *Davis* that "formality" is "essential to testimonial utterance."[33] In *Michigan v. Bryant*,[34] the Court noted that there can be "mixed motives" for a statement and that the proper inquiry is whether the declarant's "primary purpose" is "testimonial." The Court in *Bryant* further said that "[i]n making the primary purpose determination, standard rules of hearsay, designed to identify some statements as reliable, will be relevant."[35]

Finally, in *Williams*, the Court focused on whether the "primary purpose" of the out-of-court statement was to "accus[e] a targeted individual" of engaging in criminal conduct.[36] The Court found that an analyst's results from an independent laboratory conducting DNA testing on samples taken from the victim before any suspect was identified were not testimonial.[37] The Court explained that because there was no targeted individual at the time of testing, there was "no 'prospect of fabrication' and no incentive to produce anything other than a scientifically sound and reliable profile."[38] Furthermore, in contrast to the attestations that were found to be "testimonial" in *Melendez-Diaz* and *Bullcoming*, the Court found it "significant" that due to the way the work of a DNA laboratory was divided up, "it is likely that the sole purpose of each technician [was] simply to perform his or her task in accordance with accepted procedures."[39]

We have applied *Crawford* and its progeny to conclude that calibration certifications of alcohol breath simulator

---

[32] *Bullcoming v. New Mexico, supra* note 21, 131 S. Ct. at 2725 (Kennedy, J., dissenting; Bryer, C.J., and Alito, J., join).

[33] *Davis v. Washington, supra* note 12, 547 U.S. at 830 n.5.

[34] *Michigan v. Bryant, supra* note 13, 131 S. Ct. at 1161, 1155.

[35] *Id.*, 131 S. Ct. at 1155.

[36] *Williams v. Illinois, supra* note 31, 132 S. Ct. at 2242.

[37] *Id.*

[38] *Id.*, 132 S. Ct. at 2244.

[39] *Id.*

solutions[40] and documents certifying the accuracy of tuning forks for an officer's radar unit,[41] created in the course of routine duties at a time when they did not pertain to any particular pending matter, were not testimonial. In contrast, we have held that a certificate that a blood specimen was taken in "a medically acceptable manner," prepared at the request of law enforcement in connection with the arrest of the defendant, was testimonial.[42] We have never addressed whether public records or certifications of those public records that are prepared for the purpose of a pending prosecution are testimonial.

[7] We agree with numerous other courts that hold driving records are not testimonial.[43] In *Melendez-Diaz*, the Court said that unless the regularly conducted activity of the business is the production of evidence for use at trial, business records are not testimonial.[44] They are "created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial."[45] Although the employees who create driving records may reasonably believe the records will be available for some possible future prosecution, the sole purpose of creating driving records is not to create evidence for trials.[46] The creation and maintenance of driving records is a ministerial duty for the benefit of the public,[47] utilized by drivers for many purposes, including the procurement of insurance or of

---

[40] *State v. Britt*, 283 Neb. 600, 813 N.W.2d 434 (2012); *State v. Fischer*, 272 Neb. 963, 726 N.W.2d 176 (2007).

[41] *State v. Jacobson*, 273 Neb. 289, 728 N.W.2d 613 (2007).

[42] *State v. Sorensen, supra* note 3, 283 Neb. at 937, 814 N.W.2d at 377.

[43] See, e.g., *State v. King*, 213 Ariz. 632, 146 P.3d 1274 (Ariz. App. 2006); *Card v. State*, 927 So. 2d 200 (Fla. App. 2006); *State v. Shipley*, 757 N.W.2d 228 (Iowa 2008); *Com. v. McMullin*, 76 Mass. App. 904, 923 N.E.2d 1062 (2010); *State v. Vonderharr*, 733 N.W.2d 847 (Minn. App. 2007); *State v. Davis*, 211 Or. App. 550, 156 P.3d 93 (2007).

[44] *Melendez-Diaz v. Massachusetts, supra* note 20.

[45] *Id.*, 557 U.S. at 324.

[46] See *State v. Vonderharr, supra* note 43.

[47] See, e.g., Neb. Rev. Stat. § 60-483 (Reissue 2010). See, also, *State v. Vonderharr, supra* note 43.

commercial driving licenses.[48] It is clear that driving records do not fit within any of the U.S. Supreme Court's articulations of the "testimonial" test. Rather, they are prepared during routine duties at a time when they do not pertain to any particular pending matter. DMV employees, in such circumstances, are not "accusers" against a defendant.

Johnson's signature certifying that the driving abstract represented a true and exact copy of Leibel's operating record and Hraban's certification of authenticity of the abstract and its accompanying DMV documents present a more complex question. Johnson's signature was required for the admissibility of the driving abstract as a self-authenticating official record.[49] Hraban's signature was necessary for the admission of the accompanying documents.[50]

Read expansively, *Melendez-Diaz* might be interpreted to include sworn certificates that authenticate and summarize routine governmental records.[51] After all, such certifications are solemn statements "'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'"[52]

Yet most courts have determined that such certifications are not testimonial.[53] Put most simply, if "'the records themselves do not fall within the constitutional guarantee provided by the Confrontation Clause, it would be odd to hold that the foundational evidence authenticating the records do[es].'"[54]

Interestingly, in *Melendez-Diaz*, the majority opinion commented that the dissent had identified but "a single class of

---

[48] See Neb. Rev. Stat. § 60-2907 (Reissue 2010).

[49] See Neb. Rev. Stat. § 27-902 (Reissue 2008).

[50] See *id.*

[51] *State v. Murphy*, 991 A.2d 35 (Me. 2010).

[52] *Crawford v. Washington, supra* note 10, 541 U.S. at 52.

[53] See, *U.S. v. Adefehinti*, 510 F.3d 319 (D.C. Cir. 2007); *State v. Bennett*, 216 Ariz. 15, 162 P.3d 654 (Ariz. App. 2007); *State v. Murphy, supra* note 51; *Com. v. McMullin, supra* note 43; *State v. Vonderharr, supra* note 43; *Jasper v. Com.*, 49 Va. App. 749, 644 S.E.2d 406 (2007). But see *Com. v. Parenteau*, 460 Mass. 1, 948 N.E.2d 883 (2011).

[54] *State v. Adefehinti, supra* note 53, 510 F.3d at 328.

evidence which, though prepared for use at trial, was traditionally admissible: a clerk's certificate authenticating an official record—or a copy thereof—for use as evidence."[55] The Court did not explicitly hold that such certifications were testimonial, but the Court distinguished traditional certifications from the analyst's report the Court found testimonial in that case. Unlike a clerk's certificate authenticating an official record, the Court explained, the analyst's certificate was created for "the sole purpose of providing evidence against a defendant."[56]

As the Court in *Melendez-Diaz* alluded to and other courts have reasoned, certificates of authenticity are not really offered to "prov[e] one fact necessary for [the defendant's] conviction."[57] They do not have the "primary purpose of accusing a targeted individual,"[58] in the sense that they do not, in and of themselves, describe any criminal wrongdoing of the defendant.[59] The purpose of the certification is merely to establish the authenticity of documents that were prepared in a nonadversarial setting before the institution of the criminal proceeding.[60] It was the attached abstract and documents, not the certifications, which proved Leibel was driving without an ignition interlock permit.[61]

[8] Records custodians, in the capacity of authenticating documents as true and exact copies of the records on file, are more akin to the "scriveners," and the process of certifying the authenticity of a public record leaves little room for manipulation or fabrication. "Because neutral, bureaucratic information from routinely maintained public records is not obtained by use of specialized methodology, there is little, if any, practical benefit to applying the crucible of cross-examination against

---

[55] *Melendez-Diaz v. Massachusetts, supra* note 20, 557 U.S. at 322.

[56] *Id.*, 557 U.S. at 323.

[57] *Id.*, 557 U.S. at 313.

[58] *Williams v. Illinois, supra* note 31, 132 S. Ct. at 2225.

[59] See *Jasper v. Com., supra* note 53.

[60] See, *State v. Shipley, supra* note 43; *Jasper v. Com., supra* note 53.

[61] See *State v. Bennett, supra* note 53.

those who maintain the information."[62] "[C]ross-examination is a tool used to flesh out the truth, not an empty procedure."[63] We conclude that Hraban's and Johnson's statements authenticating that the records contained in exhibit 1 were true and exact copies, and were not "testimonial."

Leibel points out, however, that Hraban's certification went beyond the traditional bounds of a records custodian when she stated, "I further add that this person did not have a Work or Ignition Interlock Permit on 10/03/2011." The Court in *Melendez-Diaz*, when discussing certifications of authenticity, distinguished certifications by records custodians under a "'"narrowly circumscribed"'" authority to "'certify to the correctness of a copy of a record kept in his office'" from circumstances where a clerk attests, ex parte, that he or she had "searched for a particular relevant record and failed to find it."[64] The Court explained that, traditionally, a clerk certifying a record had "'no authority to furnish, as evidence for the trial of a lawsuit, his interpretation of what the record contains or shows, or to certify to its substance or effect.'"[65] Later, in *Norwood v. United States*,[66] the Court vacated a Ninth Circuit decision that deemed nontestimonial a clerk's certification of the absence of a fact relevant to the prosecution, upon a diligent search of the department's files. The U.S. Supreme Court remanded the cause for further consideration in light of *Melendez-Diaz*.

Hraban's statement was an "'interpretation of what the record contains or shows.'"[67] It was "testimonial" under the stated dictum in *Melendez-Diaz*. Nevertheless, because of the continuing evolution of *Crawford*, courts are divided on whether this kind of rote summarization of an attached record

---

[62] *State v. Murphy, supra* note 51, 991 A.2d at 43.

[63] *Crawford v. Washington, supra* note 10, 541 U.S. at 74 (Rehnquist, C.J., concurring in the judgment; O'Connor, J., joins).

[64] *Melendez-Diaz v. Massachusetts, supra* note 20, 557 U.S. at 322-23.

[65] *Id.*, 557 U.S. at 322.

[66] *Norwood v. United States*, 558 U.S. 983, 130 S. Ct. 491, 175 L. Ed. 2d 339 (2009) (granting petition for writ of certiorari).

[67] *Melendez-Diaz v. Massachusetts, supra* note 20, 557 U.S. at 322.

is "testimonial."[68] We find the resolution of this particular point unnecessary in this case. Even if Hraban's statement was "testimonial," it was plainly redundant to the information contained in the abstract itself. And because this was a bench trial, there was little risk that the finder of fact was unduly influenced by this "official" summary of the record or was unable to glean the relevant fact from the unsummarized DMV record. Any possible violation of Leibel's right to confrontation was undoubtedly harmless.

[9,10] The improper admission of statements in violation of the right to confrontation is a trial error subject to harmless error review.[69] The U.S. Supreme Court in *Chapman v. California*[70] held that where the trial error is of a constitutional dimension, the burden must be on the beneficiary of the error to prove beyond a reasonable doubt that the error did not contribute to the verdict obtained. This standard applies equally to both jury and bench trials.[71] We have sometimes said that in a bench trial, it is the appellant's burden to show that the trial court made a finding of guilt based exclusively on the erroneously admitted evidence; if there is other sufficient evidence supporting the finding of guilt, the conviction will not be reversed.[72] But this rule of expediency has never been

---

[68] See *State v. Woodbury*, 13 A.3d 1204 (Me. 2011). Compare *Washington v. State*, 18 So. 3d 1221 (Fla. App. 2009).

[69] See, *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986); *State v. Sorensen, supra* note 3; *State v. Quintana*, 261 Neb. 38, 621 N.W.2d 121 (2001).

[70] *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967).

[71] See, *Fahy v. Connecticut*, 375 U.S. 85, 84 S. Ct. 229, 11 L. Ed. 2d 171 (1963) (approved of in *Chapman v. California, supra* note 70); Robert E. Larsen, Navigating the Federal Trial § 13:19 (2013). See, also, *Hawkins v. LeFevre*, 758 F.2d 866 (2d Cir. 1985); *Matter of Juvenile Action No. 97036-02*, 164 Ariz. 306, 792 P.2d 769 (Ariz. App. 1990); *Gipson v. State*, 844 S.W.2d 738 (Tex. Crim. App. 1992); *State v. Read*, 147 Wash. 2d 238, 53 P.3d 26 (2002).

[72] See, *State v. Thompson*, 278 Neb. 320, 770 N.W.2d 598 (2009); *State v. Craigie*, 19 Neb. App. 790, 813 N.W.2d 521 (2012); *State v. McCurry*, 5 Neb. App. 526, 561 N.W.2d 244 (1997).

clearly applied to constitutional rights, and we will not apply a presumption here that would shift the burden of proof to the defendant.[73]

Nevertheless, whether the error is harmless in a particular case depends "upon a host of factors,"[74] and we find the fact of a bench trial a proper consideration in conducting our *Chapman* harmless error review. Harmless error review ultimately looks to the basis on which the trier of fact actually rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict would surely have been rendered, but, rather, whether the actual guilty verdict rendered in the questioned trial was surely unattributable to the error.[75] The admission of Hraban's gratuitous statement summarizing a fact clearly discernible by the district court from the attached driving abstract surely did not contribute to the guilty verdict in this case.

Finding no merit to Leibel's assignments of error concerning exhibit 1, we turn to Leibel's assignments of error relating to the statute under which he was charged.

---

[73] See, *State v. Twohig*, 238 Neb. 92, 469 N.W.2d 344 (1991); *State v. Schroder*, 232 Neb. 65, 439 N.W.2d 489 (1989). But see, e.g., *State v. Harms*, 263 Neb. 814, 643 N.W.2d 359 (2002); *State v. Lara*, 258 Neb. 996, 607 N.W.2d 487 (2000). See, also, e.g., Note, *Applicability of Rules of Evidence Where the Judge Is the Trier of Facts in an Action at Law*, 42 Harv. L. Rev. 258 (1928).

[74] *Delaware v. Van Arsdall, supra* note 69, 475 U.S. at 684. See, also, e.g., *U.S. v. Mohamed*, No. 12-2835, 2013 WL 4259495 (8th Cir. Aug. 16, 2013); *U.S. v. Rosalez*, 711 F.3d 1194 (10th Cir. 2013), *cert. denied* No. 13-5782, 2013 WL 4199989 (U.S. Oct. 7, 2013); *U.S. v. Cameron*, 699 F.3d 621 (1st Cir. 2012), *cert. denied* ___ U.S. ___, 133 S. Ct. 1845, 185 L. Ed. 2d 850 (2013); *State v. Mitchell*, 296 Conn. 449, 996 A.2d 251 (2010); *State v. Levell*, 128 Haw. 34, 282 P.3d 576 (2012); *People v. Stechly*, 225 Ill. 2d 246, 870 N.E.2d 333, 312 Ill. Dec. 268 (2007); *State v. Holman*, 295 Kan. 116, 284 P.3d 251 (2012); *State v. Wille*, 559 So. 2d 1321 (La. 1990); *Com. v. Vasquez*, 456 Mass. 350, 923 N.E.2d 524 (2010); *State v. Pradubsri*, 403 S.C. 270, 743 S.E.2d 98 (S. C. App. 2013); *State v. Tribble*, 67 A.3d 210 (Vt. 2012); *State v. Jasper*, 174 Wash. 2d 96, 271 P.3d 876 (2012).

[75] *State v. Scott*, 284 Neb. 703, 824 N.W.2d 668 (2012).

§ 60-6,197.06(1)

Leibel asserts that § 60-6,197.06(1) was not the proper statute under which to charge him. A violation of § 60-6,197.06(1) is a Class IV felony. Leibel argues that § 60-6,197.06(1) clearly encompasses only those drivers who are operating a vehicle during a time when they are ineligible by court order to drive even with an ignition interlock device and permit. Because he was eligible to drive with a device and permit, Leibel claims the State should have instead charged him with violating § 60-6,211.05(5). Section 60-6,211.05(5), since repealed,[76] set forth the misdemeanor offense of driving a vehicle without an ignition interlock device "in violation of the requirements of the court order." The relevant language of § 60-6,197.06(1) states: "Unless otherwise provided by law pursuant to an ignition interlock permit, any person operating a motor vehicle . . . while his or her operator's license has been revoked . . . shall be guilty of a Class IV felony." Section 60-6,211.05(5) stated in full:

> A person who tampers with or circumvents an ignition interlock device installed under a court order while the order is in effect, who operates a motor vehicle which is not equipped with an ignition interlock device in violation of a court order made pursuant to this section, or who otherwise operates a motor vehicle equipped with an ignition interlock device in violation of the requirements of the court order under which the device was installed shall be guilty of a Class II misdemeanor.

In *Hernandez*,[77] we considered whether a driver who had a permit but then drove without the ignition interlock device committed a felony under § 60-6,197.06(1). We said that the introductory exclusionary clause of § 60-6,197.06(1) must be read in pari materia with other applicable statutes specifically crafted for ignition interlock device violations, such as § 60-6,211.05(5). We concluded that a driver who operated a vehicle with a permit but without an ignition interlock device violated § 60-6,211.05(5), instead of § 60-6,197.06(1).

---

[76] See 2011 Neb. Laws, L.B. 667, § 40.

[77] *State v. Hernandez, supra* note 1.

We said that the introductory exclusionary clause of § 60-6,197.06(1) meant "'unless a person has an [ignition] interlock *permit*.'"[78] "[O]ther statutes," such as § 60-6,211.05(5) "charge a person who violates the terms of his or her ignition interlock *permit*."[79]

The State argues that Leibel's conduct is distinguishable from the conduct of the defendant in *Hernandez* because Leibel did not obtain a permit before driving without an ignition interlock device. We agree. Section 60-6,197.06(1) states that "any person operating a motor vehicle . . . while his or her operator's license has been revoked" is guilty of a Class IV felony under that section "[u]nless otherwise provided by law pursuant to an ignition interlock *permit*." (Emphasis supplied.) For whatever reason, the Legislature chose to draw the line at obtaining a permit. While the exclusionary clause of § 60-6,197.06(1) does not clearly encompass drivers (such as the defendant in *Hernandez*) who obtain a permit but who then drive without an ignition interlock device, we find no similar ambiguity for drivers who neglect to obtain the permit. One cannot be operating a vehicle "provided by law pursuant to an ignition interlock *permit*," if the driver does not have a permit.[80] Leibel did not have a permit, and thus, he did not fall under this exception to the felony provisions of § 60-6,197.06(1). The district court accordingly did not err in convicting Leibel of violating § 60-6,197.06(1).

## Excessive Sentence

[11] Lastly, Leibel asserts that the sentence of 90 days' jail time was excessive. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.[81] Given Leibel's criminal record and the fact that,

---

[78] *Id.* at 427, 809 N.W.2d at 283 (emphasis supplied).

[79] *Id.* (emphasis supplied).

[80] See § 60-6,197.06(1) (emphasis supplied).

[81] *State v. Hamilton*, 277 Neb. 593, 763 N.W.2d 731 (2009).

as the district court noted, this was a probation violation, we conclude that the district court did not abuse its discretion in sentencing Leibel to 90 days in jail.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.