IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. SHELDON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
WILLIAM E. SHELDON, APPELLANT.

Filed July 22, 2014.    No. A-13-968.

Appeal from the District Court for Buffalo County: JOHN P. ICENOGLE, Judge. Affirmed.

Thomas S. Stewart, Deputy Buffalo County Public Defender, for appellant.

Jon Bruning, Attorney General, and George R. Love for appellee.

MOORE, PIRTLE, and RIEDMANN, Judges.

MOORE, Judge.

## I. INTRODUCTION

William E. Sheldon appeals from his convictions in the district court for Buffalo County for terroristic threats, use of a firearm to commit a felony, and tampering with physical evidence. Sheldon was sentenced to prison for 5 to 6 years for use of a firearm to be served consecutively to his concurrent sentences of 1 to 2 years' imprisonment on the other two convictions. Sheldon assigns error to the sufficiency of the evidence, the court's failure to give his requested instructions regarding defense of another and choice of lesser harms, and the sentences imposed. Because the evidence was sufficient to convict Sheldon and the court did not err in failing to give his requested instructions or abuse its discretion in sentencing him, we affirm.

## II. BACKGROUND

The State filed an information on September 5, 2012, charging Sheldon with one count of use of a firearm to commit a felony in violation of Neb. Rev. Stat. § 28-1205 (Cum. Supp. 2012), a Class IC felony; one count of tampering with physical evidence in violation of Neb. Rev. Stat.

§ 28-922 (Reissue 2008), a Class IV felony; and one count of terroristic threats in violation of Neb. Rev. Stat. § 28-311.01(1)(a) (Reissue 2008), a Class IV felony.

A jury trial was held on August 19 and 20, 2013. The charges against Sheldon stem from an altercation that occurred in the parking lot of Jammers Roadhouse (Jammers) located in Buffalo County, Nebraska, on June 3, 2012. At the time of the incident, Sheldon was the manager or owner of Jammers. On the evening of June 3, brothers Fredric and Justin Daringer spent an hour in Jammers around 8 p.m., encountered no particular difficulties, and then left to go to a wedding reception. The Daringers returned to Jammers around closing time, entered into an exchange of unpleasantries with one of the dancers, and were asked to leave. The Daringers exited the building and returned to their pickup truck in the parking lot. Shortly thereafter, the dancer left the building, approached the Daringers, and started talking to them. Further unpleasant words were exchanged, after which the dancer struck Justin, grabbed his hat, threw it on the ground, and tried to stomp on it. Justin grabbed the dancer's arm, pushed her back, and told her no. Fredric pushed Justin and the girl apart and called for help. When he was calling for help, Fredric saw Sheldon outside the door of Jammers. Fredric testified that he also observed a man in a vest wearing a bandanna on his head. Thereafter, various individuals "showed up" in the parking lot, and according to Fredric, it "got chaotic." Several people attacked Fredric, hitting and kicking him. Fredric was on the ground, trying to stand up, when he saw the "door man" right in front of him. After standing up, Fredric saw a gun barrel right in the corner of his eye, turned to look, and saw a gun. The person with the gun said, "do you want to live or die," repeating the statement several times. Fredric bowed his head, did not offer a fight, and told the man "I want to live" several times. Fredric was not able to get a clear line of sight on the person who had the gun, but observed him with his peripheral vision. He thought the gun looked like a semiautomatic pistol. After the altercation, Fredric called the 911 emergency dispatch service, and the brothers drove to a nearby truckstop to wait for police. During the initial interview, Fredric told law enforcement that he thought the man with the gun had on a vest and bandanna, but later, through a photographic lineup and in watching 2 weeks prior to trial the surveillance video, Fredric identified Sheldon.

Justin testified similarly to Fredric. Justin observed Sheldon outside smoking prior to the altercation and testified that Sheldon was wearing jeans, a light gray T-shirt, and "flip-flops." Justin testified that during the altercation, a person put a gun to his head and asked him if he wanted to die. That individual then went over to Fredric, put the gun in Fredric's face, and asked him if he wanted to live or die, at which point, the fighting wound down and stopped. Justin felt like he got a good look at the individual with the gun. At trial, Justin identified Sheldon as the person who asked his brother if he wanted to live or die. Justin initially told officers that he thought the man with the gun had on a black vest and a blue bandanna, but after returning to the scene with law enforcement and hearing Sheldon talk, he immediately identified Sheldon as the person who had the gun.

Deputy Dennis Small with the Buffalo County sheriff's office was dispatched to Jammers after a report of an assault possibly involving a brandished handgun. He initially went to the truckstop near Jammers where he contacted Fredric and Justin, who had blood on their faces and/or clothes. Fredric told Small that he thought the person that assaulted him was wearing a black vest and had a bandanna on his head.

Small transported Fredric to Jammers where he was joined by Sgt. Robert Tubbs, a State Patrol trooper, and Sheldon. Fredric began talking to Sheldon about the events in the parking lot. Small did not participate in their conversation, but he heard Sheldon apologize. Small also heard Sheldon state that he did not know anything about what happened in the parking lot and that he wished he could in some way make it right with Fredric. At some point, Small retrieved Justin from the truckstop and brought him to Jammers, where the Daringers both conversed with Sheldon.

Tubbs spoke to Sheldon about the altercation that occurred in the parking lot. Sheldon told Tubbs he could not recall that anything happened that evening in the parking lot. Tubbs participated in the conversation the Daringers had with Sheldon in the parking lot. Justin told Tubbs he thought Sheldon was the one with the gun during the altercation. At that point, Tubbs recalled Sheldon wearing jeans and a white or light-colored T-shirt.

Small observed blood on the pavement in the area of the parking lot where the Daringers had previously parked their truck while at Jammers. Small asked Sheldon if he could view surveillance video of the parking lot. Sheldon initially declined, and when Small informed him that he would obtain a search warrant to view the video, Small observed Sheldon texting on his cell phone. Around 4 or 4:30 a.m., Sheldon asked to leave the property, and Small allowed him to do so. Before Sheldon left, Small obtained his consent to search his vehicle, but the search of Sheldon's vehicle did not reveal any relevant evidence.

Around 7 a.m., Small learned that the search warrant had been obtained, and he called Sheldon, asking him to return to Jammers to be present when the warrant was served. When the search warrant was executed, law enforcement officers located several people on the premises and in a camper parked on the property. One of the people located was the dancer who was reportedly involved in the assault, but she declined to make a statement. None of the people located by the officers on the scene were wearing a vest or bandanna. Small did not recall what Sheldon was wearing initially, but he testified that when Sheldon returned to Jammers, he was wearing different clothes than he had been.

During the search, Sheldon denied that there were firearms on the premises, but police located a revolver, which was not an automatic, wrapped in a blue bandanna. They also located a Ruger semiautomatic pistol in the camper. When confronted with the discovery of the semiautomatic pistol, Sheldon stated he had no idea it was in his camper or where it came from.

Officers also found Nicholas Powell asleep inside Jammers. Powell testified that he worked with Sheldon for years at Jammers. Powell testified that at some point prior to June 2012, he sold Sheldon the .45-caliber Ruger semiautomatic pistol eventually recovered from Sheldon's camper. With respect to the parking lot incident, Powell testified that he was in the bar when the front door opened and Sheldon told him something like "get rid of it" or "hide the DVR." Powell grabbed the DVR, pulled all the cords out, and hid it in the ceiling next to the HVAC system. The video room in the bar had an empty space which would have fit the DVR later recovered.

The hidden DVR was not located during the law enforcement search, but Sheldon eventually provided police with the DVR equipment from Jammers. A copy of the surveillance video from the night in question was admitted into evidence, and it shows about 8 minutes of video from all 16 cameras at Jammers. Sheldon is visible in the video, but the poor quality of the

video makes it difficult to discern exactly what he is wearing, although it is possible to see that he is bare-headed and wearing a light-colored T-shirt. It is also difficult to discern what occurred during the parking lot altercation.

After the State rested its case, Sheldon's attorney moved for a directed verdict which was overruled. Sheldon did not adduce any evidence.

During the jury instruction conference, Sheldon offered two proposed instructions on defense of another and choice of lesser harm. The court refused to give the instructions, finding that the evidence did not support giving either of the proposed instructions.

The jury found Sheldon guilty on all three counts of the information. The district court accepted the verdicts and ordered a presentence investigation.

Sheldon filed a motion for new trial, which was overruled by the district court on October 29, 2013. The court found that the jury had adequate evidence on which to base its findings of guilt as to each of the counts in the information. The court also considered Sheldon's assertion that the court erred in failing to give instructions regarding defense of another and choice of a lesser harm. The court discussed whether the evidence was sufficient to create an inference that Sheldon acted to protect the dancer or whether his actions constituted a choice of lesser harm. The court noted Sheldon's denials of any awareness of the parking lot altercation. In addition, the court found that the evidence failed to offer any basis upon which a proper inference as to Sheldon's motives (in threatening with a gun) could be discerned. The court concluded that, absent evidence from which an inference could be drawn, neither justification-of-force instruction requested by Sheldon should have been given.

On November 4, 2013, following a sentencing hearing, the district court entered an order sentencing Sheldon to imprisonment for 5 to 6 years on the use of a firearm conviction, to be served consecutively to his sentences on the other two convictions. The court sentenced Sheldon to concurrent terms of 1 to 2 years' imprisonment on the terroristic threats and evidence tampering convictions. Sheldon subsequently perfected his appeal to this court.

## III. ASSIGNMENTS OF ERROR

Sheldon asserts that there was insufficient evidence to convict him of the charges. He also asserts that the district court erred in refusing to give his requested instructions regarding defense of another and choice of lesser harm and abused its discretion by imposing excessive sentences.

## IV. STANDARD OF REVIEW

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Collins*, 281 Neb. 927, 799 N.W.2d 693 (2011).

Whether jury instructions given by a trial court are correct is a question of law. *State v. Green*, 287 Neb. 212, 842 N.W.2d 74 (2014). When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below. *State v. Ely*, 287 Neb. 147, 841 N.W.2d 216 (2014).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Matit*, 288 Neb. 163, 846 N.W.2d 232 (2014). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Ramirez*, 287 Neb. 356, 842 N.W.2d 694 (2014).

## V. ANALYSIS

### 1. SUFFICIENCY OF EVIDENCE

Sheldon asserts that there was insufficient evidence to convict him of the charges. He was convicted of terroristic threats, use of a weapon to commit a felony, and tampering with physical evidence.

### (a) Terroristic Threats

Under § 28-311.01(1)(a), a person "commits terroristic threats if he or she threatens to commit any crime of violence" with "the intent to terrorize another." The crime of terroristic threats does not require intent to execute the threats made and does not require that the victim be actually terrorized. See *State v. Saltzman*, 235 Neb. 964, 458 N.W.2d 239 (1990).

There is evidence in the record that during the encounter in the parking lot, Sheldon pointed a gun at the Daringers and said several times "do you want to live or die." Sheldon attacks the credibility of the Daringers' testimony, pointing to certain conflicting evidence in support of his arguments, including the conflicting statements and testimony about what clothing the gunman was wearing and whether the Daringers were able to identify Sheldon. In reviewing criminal convictions, this court does not resolve conflicts in the evidence or pass on the credibility of witnesses. *State v. Collins, supra*. There was evidence that Sheldon threatened the Daringers' lives, which is sufficient to support the conviction for terroristic threats.

### (b) Use of Weapon

"Any person who uses a firearm, a knife, brass or iron knuckles, or any other deadly weapon to commit any felony which may be prosecuted in a court of this state commits the offense of use of a deadly weapon to commit a felony." § 28-1205(a). As discussed above, there is evidence that Sheldon pointed a gun at the Daringers and made statements constituting terroristic threats. Terroristic threats is a Class IV felony. See § 28-311.01. The evidence was sufficient to support Sheldon's conviction for use of a weapon to commit a felony.

### (c) Evidence Tampering

A person commits the offense of tampering with physical evidence if, believing that an official proceeding is pending or about to be instituted and acting without legal right or authority, he:

- 5 -

. . . [d]estroys, mutilates, conceals, removes, or alters physical evidence with the intent to impair its verity or availability in the pending or prospective official proceeding. . . .

§ 28-922.

There is evidence in the record that when law enforcement asked Sheldon to view the surveillance video of the parking lot, Sheldon declined and began texting on his cell phone after being advised that officers would obtain a search warrant. Powell testified that after the parking lot incident, Sheldon told him to "get rid of it" or "hide the DVR," which Powell understood to mean that he was to get rid of the DVR. Powell then removed the DVR and hid it in the ceiling. Law enforcement did not recover the DVR while executing various search warrants, but during the search of the bar, they did observe an empty space in the video room. Sheldon later produced the relevant DVR and hard drive and delivered them to law enforcement.

There is no evidence to suggest that Sheldon destroyed, mutilated, or altered evidence, but there is evidence that he directed the removal or concealment of physical evidence in connection with the law enforcement investigation of the incident in the parking lot. There was sufficient evidence to support Sheldon's conviction for tampering with physical evidence.

## 2. JURY INSTRUCTIONS

Sheldon asserts that the district court erred in refusing to give his requested instructions regarding defense of another and choice of lesser harm. To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *State v. Morgan*, 286 Neb. 556, 837 N.W.2d 543 (2013).

### (a) Defense of Another

Neb. Rev. Stat. § 28-1410(1) (Reissue 2008) authorizes an individual to use force against a person to protect a third person in instances where:

(a) The actor would be justified under section 28-1409 in using such force to protect himself against the injury he believes to be threatened to the person whom he seeks to protect;

(b) Under the circumstances as the actor believes them to be, the person whom he seeks to protect would be justified in using such protective force; and

(c) The actor believes that his intervention is necessary for the protection of such other person.

Sheldon's proposed instruction No. 2 stated:

DEFENSE OF ANOTHER

[Sheldon] acted in defense of another person if:

(1) [Sheldon] reasonably believed that [Fredric or Justin] used force against [the dancer]; and

(2) under the circumstances as they existed at the time, [Sheldon] reasonably believed that the force [he] used against [Fredric or Justin] was immediately necessary to protect [the dancer] against any such force used by [Fredric or Justin].

The fact that [Sheldon] may have been wrong in estimating the danger to [the dancer] does not matter so long as there was a reasonable basis for what [Sheldon] believed and he acted reasonably in response to that belief.

Sheldon's proposed instruction is a correct statement of the law and is taken directly from the pattern jury instruction on defense of another. See NJI2d Crim. § 7.4. However, this instruction was not warranted by the evidence. The evidence shows that the Daringers were already under attack by employees or patrons of the bar prior to when Sheldon pointed the gun at them and asked if they wanted to live or die. Further, Sheldon denied being aware of the parking lot incident, denied having a gun on the premises, and denied knowledge of the gun when one was found in his camper. The evidence did not support Sheldon's contention that he used the gun in defense of another. The district court did not err in failing to give Sheldon's proposed jury instruction on defense of another.

(b) Choice of Lesser Harm

The justification or choice of evils defense is codified in Nebraska at Neb. Rev. Stat. § 28-1407 (Reissue 2008). The justification or choice of evils defense requires that a defendant (1) acts to avoid a greater harm; (2) reasonably believes that the particular action is necessary to avoid a specific and immediately imminent harm; and (3) reasonably believes that the selected action is the least harmful alternative to avoid the harm, actual or reasonably believed by the defendant to be certain to occur. *State v. Beal*, 21 Neb. App. 939, 846 N.W.2d 282 (2014); § 28-1407. For the justification or choice of evils defense to be factually available to a defendant, he or she must factually establish that his or her actions were efforts to prevent a specific and immediate harm to at least one reasonably identifiable person. *State v. Beal, supra*.

Sheldon's proposed instruction No. 3 stated:

CHOICE OF LESSER HARM
[Sheldon] acted to avoid a greater harm if:
(1) the harm he sought to avoid was greater than the harm sought to be prevented by the law defining terroristic threats; and
(2) [Sheldon] reasonably believed that acting as he did was the least harmful alternative to avoid this threatened harm.
The fact that [Sheldon] may have been wrong in what he believed does not matter so long as there was a reasonable basis for what he believed and he acted reasonably in response to his beliefs.

As with Sheldon's other proposed instruction, this instruction is a correct statement of the law and follows the relevant pattern jury instruction, see NJI2d Crim. § 7.6 (choice of lesser harm), but it was not warranted by the evidence. Given Sheldon's denials of knowledge of the incident or the gun and the evidence of other individuals attacking the Daringers, the evidence is not sufficient to conclude that Sheldon's action in threatening the Daringers with a gun was the least harmful alternative to avoid any threat to the dancer or was necessary to prevent a specific

and immediate harm. The district court did not err in failing to give Sheldon's proposed jury instruction on choice of lesser harm.

### 3. EXCESSIVE SENTENCES

Sheldon asserts that the district court abused its discretion by imposing excessive sentences. Sheldon was convicted of use of a firearm to commit a felony, which is a Class IC felony, and sentenced to imprisonment for 5 to 6 years to be served consecutively to his sentences on the other convictions. He was sentenced to concurrent sentences of 1 to 2 years' imprisonment for tampering with physical evidence and terroristic threats, both of which are Class IV felonies. Class IC felonies are punishable by a mandatory minimum of 5 years' and a maximum of 50 years' imprisonment; Class IV felonies are punishable by up to 5 years' imprisonment, a $10,000 fine, or both. See, § 28-1205; § 28-922; § 28-311.01; Neb. Rev. Stat. § 28-105(1) (Cum. Supp. 2012). Thus, Sheldon's sentences are well within the statutory guidelines.

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. Matit*, 288 Neb. 163, 846 N.W.2d 232 (2014). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *State v. Leibel*, 286 Neb. 725, 838 N.W.2d 286 (2013).

Sheldon was 43 years old at the time of sentencing. He has a 12th grade education and attended 5 years of college. He was unemployed at the time of the presentence investigation. Sheldon does not have an extensive criminal record, and he scored in the low risk/needs range on the level of service/case management inventory.

It is clear that the district court considered the relevant factors in sentencing Sheldon. The court imposed sentences on the low end of the statutory range for all three convictions, particularly given the mandatory minimum sentence of 5 years' imprisonment for the weapons conviction, a fact acknowledged by Sheldon in his appellate brief. We find no abuse of discretion in the sentences imposed.

### VI. CONCLUSION

The evidence was sufficient to convict Sheldon of the crimes charged. The district court did not err in failing to give Sheldon's proposed instructions or abuse its discretion in sentencing Sheldon.

AFFIRMED.